VICTORY ELECTRICAL SUPPLY CO., INC., Respondent, *v.*
F. A. D. ANDREA, INC., Appellant.

(Argued April 1, 1930; decided May 6, 1930.)

*George W. Tucker* and *Charles E. Francis* for appellant.

*Ralph A. McClelland* and *Charles F. Murphy* for
respondent. The first cause of action was sustained by

the evidence both as to the contract alleged and the damages sustained, presenting a question of fact for the jury. (*Adams* v. *Fitzpatrick*, 125 N. Y. 124; *Brown* v. *Actors' Fund*, 103 Misc. Rep. 578; 190 App. Div. 908; *Stevens* v. *Amsink*, 149 App. Div. 220; *Buffalo & N. Y. City R. R. Co.* v. *Dudley*, 14 N. Y. 336; *Underwood* v. *New Netherland Bank*, 150 N. Y. Supp. 487; New York Law of Contracts, vol. 2, pp. 1279, 1604; *Jones* v. *City of New York*, 57 App. Div. 403; *Breed* v. *Rosedale Terrace Co.*, 216 N. Y. 246; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Dickinson* v. *Hart*, 142 N. Y. 183; *Greenwald* v. *Gotham Silk Hosiery Co.*, 126 Misc. Rep. 299; *Hogan* v. *Rosenthal*, 127 App. Div. 312; *Candia & Co.* v. *Rubin*, 209 App. Div. 357.) The order of June 28, 1926, in conjunction with the contract of August 13, 1923, and the continued similar business of the parties was sufficient proof of the fourth cause of action. (*Hogan* v. *Rosenthal*, 127 App. Div. 312; *Candia & Co.* v. *Rubin*, 209 App. Div. 357.)

CRANE, J. The plaintiff has recovered judgment on two causes of action, both of which are for breach of contract to deliver goods.

The defendant is a manufacturer of radio receiving sets and allied products, known to the trade as " FADA." The plaintiff was a wholesaler, and one of the several authorized distributors of the defendant's radio products in the metropolitan district. The distributor could not sell to any retailer, but was confined to those who were licensed by the defendant to purchase and to handle its product. The distributors, however, work up this market among the retailers and procure licenses for them as well as orders for the merchandise. A two-year written contract was made April 13, 1923, between the plaintiff and the defendant for the purchase and distribution to these licensed retailers of FADA radios and parts. Business was carried on apparently with satisfaction and success after the expiration of the written contract, but under

the same arrangements and conditions until June 1, 1926, when a new contract, partly oral and partly written, was made for one year, or up to May 30, 1927. The terms and conditions of the 1923 contract, as slightly modified, were adopted as the contract for 1926–1927.

On July 20, 1926, the defendant notified the plaintiff that it no longer could permit it to continue as one of the distributors of its products, terminated the relationship and broke its contract.

The plaintiff then brought suit, alleging in the first cause of action the facts, as herein stated, and demanding damages. This first cause of action is broad enough in its allegations to cover any and all damage arising out of the breach. The plaintiff alleges in the eleventh paragraph of the complaint that it had *secured* and had *placed* with the defendant many orders for FADA products. The evidence under the first cause of action showed that the plaintiff had secured franchise applications from fifty-nine dealers and had obtained orders for FADA merchandise of the cost price of $23,976, and the sales price to retail dealers of $31,968. On this cause of action the jury awarded the plaintiff a verdict of $7,500. In our judgment the evidence as to the making of the contract of June 1, 1926, was sufficient to create a question of fact which this court cannot review. The recovery on the first cause of action must be affirmed.

The fourth cause of action requires further analysis. Although the plaintiff under the first cause of action could have recovered, as heretofore stated, all of its damage arising out of the breach of the contract, it apparently confined the proof to the profits on such orders as it had obtained from licensed customers. There was nothing to prevent the plaintiff from proving under this cause of action the damages arising from orders which it had placed with the defendant, although the plaintiff had not as yet sold the goods to retailers. The defendant was liable to the plaintiff for the profits on all orders under

the contract which it had accepted and had subsequently refused to fill. This is the usual and customary way of proving damage in a contract case. The damage covers not only the loss of profits on undelivered goods which the purchaser has resold, but also the loss of profits on goods which the defendant has agreed to deliver, and which the purchaser can dispose of in the market.

The fourth cause of action, however, deals with a single order, so called, given the 28th day of June, 1926, for products to be manufactured during the coming months, according to new models, amounting to cost price to the plaintiff of $29,439.90, dealers' price $39,247.20. The defendant never acknowledged this as an order, and claims that it was a mere estimate obtained from its distributors as a guide for its factory in the manufacturing of its radios, the purpose being to obtain some measure for the output of the factory. An examination of the evidence leads us to conclude that in this the defendant is correct, and that the plaintiff has failed to offer evidence sufficient to raise a question of fact.

On examination before trial, Charles M. Sherwood, the sales manager for the metropolitan district, New York, testified regarding this alleged order: " I told them, as I tell all distributors, at the opening of a season, to try and anticipate their requirements over a specified period, or unspecified as the case might be, and place an order with the house entirely on quantities, which they could use, which are subject to revision or cancellation and so forth, and so on, if the season progressing shows that those particular items or some items are not moving as we expect they might. * * * The F. A. D. Andrea Company were just preparing to go into a schedule of manufacturing. We had no models out, as I remember; we only had pictures and general conversation as to what the line was to be. Anticipating what the factory could produce in a stated period of time, we went to the distributors, to try and anticipate what they thought they

would need to complete their dealers' orders over a like period. It was not any immediate proposition; it was all future stuff."

At the trial, Sherwood testified: " It would· be necessary to try to anticipate what the general requirements might be covering a period of notice enough simply to get the factory in production." As to the order or estimate given by the plaintiff·in response to his request, he says that it was an estimate on the part of the plaintiff as to what they might be able to do in the next several months.

This order, or estimate, is dated June 28, 1926, and has the form of an order, except that there is no shipping date. Addressed to the defendant, it begins by saying, " Kindly Deliver by our Truck. Shipping Date (Blank)." The number and kind of items of merchandise thereafter follow together with the words, " We reserve the right to cancel all or any part of this order if goods are not delivered on specified date. Mail invoice at once covering this order."

No invoice was ever sent to the plaintiff, and no goods under this so-called order were demanded, and no shipping dates or directions given. The items therein referred to were not in existence; they were to be manufactured later. The amount called for is significant, the cost to the dealer being $29,439.60, and the dealer's price $39,247.30. The total amount of merchandise purchased by the plaintiff from the defendant in the years commencing July 28, 1925, to July 28, 1927, was cost price, $87,346.53. This one order, therefore, was for about one-third the amount of sales for two years, exclusive of orders for goods on hand. Customarily, the orders had been given monthly, and the amount varied up to as high as $2,000 in the dull season, and higher at other times. Never, however, had any monthly order or any previous order reached such a high figure as approximately $30,000.

With this background to give color and meaning to the business expressions of these business men, we turn to

the testimony of John H. ·Avazian, president of the plaintiff, manager and principal stockholder. He testifies regarding this conversation with Sherwood: " Q. Is it not a fact that you handed this Exhibit (being the above alleged order) which you have just had in your hand to Mr. Sherwood in response to his request for some kind of an estimate as to what you thought the plaintiff might be able to do in the way of doing business for a period of several months from that time? A. At his request, yes.

" Q. There never has been a time between August 13, 1923, when the plaintiff and the defendant first started to do business together, that an order was placed by the plaintiff with the defendant for anything like the amount of merchandise listed on the Exhibit (order in question) at one time? A. At one time, no."

We appreciate that it is impossible to deal with a question of evidence in an opinion without leaving it somewhat fragmentary and unsatisfactory. We can only quote enough to give reasons for our decision, and yet not omit anything which would point in the opposite direction, removing the question from our jurisdiction. We are confined to the question, Does the evidence raise an issue of fact? If there be a substantial dispute on the evidence, we are foreclosed by the Constitution from reviewing the merits of the dispute. Every case is not as simple as the plain " yea " upon the one side, and the " nay " upon the other. Conversations, letters, documents, lead to scrutiny and examination and to fair judgment of their meaning. Men differ in their opinions, as is apparent from the disagreement among the judges in some cases. After careful review, however, of the evidence in this case, the extracts which we have given above lead us to the conclusion that the so-called order of June 28, 1926, was intended as a mere estimate, and not as an order; that it was not given as a direct binding order for goods under the contract, and was not received and understood as such by the defendant. The evidence of the

plaintiff's president, and the action of the plaintiff thereafter, together with the extraordinary amount of goods specified, indicate this to be so.

We, therefore, are of the opinion that the plaintiff failed to make out a case as to the fourth cause of action. It should have been dismissed.

One judgment was entered for the recovery upon the two causes of action in the sum of $15,000. The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event, unless the plaintiff stipulates in writing within thirty days to reduce the amount of the judgment by $7,500, in which case the judgment as so modified should be affirmed, without costs in the Appellate Division or in this court.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.